**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| TOBIAS MOELLER-BERTRAM, individually, and on behalf of all others similarly situated, | |
| *Plaintiff*, | Case No. _____ |
| v. | |
| GEMINI TRUST COMPANY, LLC; and DIGITAL CURRENCY GROUP, INC., | [Index No. 151710/2023 in the New York State Supreme Court for New York County] |
| *Defendants*. | |

### NOTICE OF REMOVAL

PLEASE TAKE NOTICE that, pursuant to 28 U.S.C. §§ 1332, 1334, 1446, 1452, and 1453, Defendant Digital Currency Group, Inc. ("DCG" or "Defendant"), by and through its undersigned counsel, hereby removes to this Court the civil action captioned *Tobias Moeller-Bertram v. Gemini Trust Company, LLC et al.*, Index No. 151710/2023 (N.Y. Sup. Ct., County of New York, February 22, 2023) (the "State Court Action"). This putative securities class action, which was originally filed in state court, asserts claims on a class basis, exclusively under the Securities Act of 1933. The State Court Action is subject to this Court's removal jurisdiction for two reasons: first, the State Court Action is an action related to a bankruptcy case; and second, the State Court Action meets all conditions under the Class Action Fairness Act, codified in 28 U.S.C. §§ 1332, 1453, 1711–15.

In further support of removal, Defendant states as follows:

1

## BACKGROUND

1.      On February 22, 2023, Plaintiff Tobias Moeller-Bertram ("Plaintiff"), on behalf of himself and all other persons similarly situated, commenced this putative securities class action by filing a complaint (the "Complaint") in the State Court Action.  Defendants have not filed an answer or any other responsive pleadings in the State Court Action.  As required under 28 U.S.C. § 1446(a), true and correct copies of "all process, pleadings, and orders served upon" Defendants in the State Court Action to date, are attached hereto as Exhibit A.

2.      On February 23, 2023, Defendants' respective registered agents received service of the attached Summons and Complaint.  This Notice of Removal is therefore timely and filed within 30 days of service of the Summons.  *See* 28 U.S.C. § 1446(b).  Venue is proper in this Court because the Supreme Court of the State of New York, New York County is located within the Southern District of New York.  *See* 28 U.S.C. § 1446(a).

## JURISDICTION & GROUNDS FOR REMOVAL

### I.      Removal is Proper under 28 U.S.C. §1452

3.      Defendant may properly remove any civil action "to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under Section 1334 of this title."  28 U.S.C. § 1452(a).  Under Section 1334, this Court has original jurisdiction over "all civil proceedings . . . related to cases under title 11[,]" commonly known as bankruptcy cases.  28 U.S.C. § 1334(b).  "Related to" jurisdiction exists whenever an "'action's outcome might have *any* conceivable effect on the bankruptcy estate.'"  *SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 339-340 (2d Cir. 2018) (emphasis added) (citation omitted).

4.      The State Court Action asserts claims that Defendants DCG and Gemini Trust Company, LLC ("Gemini," and together with DCG, "Defendants") have committed actionable

violations of Sections 5, 12 and 15 of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. §§ 77e, 77l, and 77o.  (Ex. A, Compl. ¶ 1).  Specifically, Plaintiff alleges, among other things, that DCG was a "control person" of non-party Genesis Global Capital, LLC under Section 15 of the Securities Act; and that between February 2021 and November 2022, Gemini and Genesis Global Capital, LLC offered and sold unregistered securities through the Gemini Earn program in violation of Sections 5 and 12 of the Securities Act.  (Ex. A, Compl. ¶ 1).  These Securities Act claims are the only claims asserted in the Complaint.

5.      On January 19, 2023, Genesis Global Holdco, LLC and its affiliates, Genesis Global Capital, LLC and Genesis Asia Pacific PTE Ltd. (collectively, "Genesis") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.*, with the United States Bankruptcy Court for the Southern District of New York.  These chapter 11 cases are jointly administered under the caption *In re Genesis Global Holdco, LLC, et al*., No. 23-10063-SHL (Bankr. S.D.N.Y.) (the "Genesis Bankruptcy Cases").  On February 6, 2023, Genesis, Genesis' creditors (including Gemini), and DCG reached an agreement in principle, that if finalized and confirmed by the Bankruptcy Court in connection with a chapter 11 plan that becomes effective, would involve Defendant DCG contributing significant value to the Genesis estate.  Such agreement includes DCG contributing 100% of the equity interests of Genesis Global Trading, financing to Genesis, and a contribution of preferred stock to the Genesis bankruptcy estates.  (*See* Ex. B at 2, 4, & 7).  Such agreement would also release, remise, and forever discharge DCG, Gemini, and Genesis from liability for any claims brought in connection with the Genesis Bankruptcy Cases by and among the parties to the agreement.  (*See* Ex. B at 17-18).  A true and correct copy of the so-called "Restructuring Term Sheet"—memorializing the aforementioned agreement and filed in the Genesis Bankruptcy Cases at Dkt. No. 80—is attached hereto as Exhibit

B.

6.     The State Court Action is "related to" the Genesis Bankruptcy Cases because any discovery or rulings in the State Court Action will have a conceivable—if not substantial—effect on the handling and administration of Genesis' bankruptcy estates. *See SPV Osus Ltd*., 882 F.3d at 339-40.

7.     First, the State Court Action arises out of the same nexus of facts that give rise to the general unsecured claims in the Genesis Bankruptcy Cases. As a consequence, the State Court Action will require substantial document discovery from Genesis—which are the debtors in the Genesis Bankruptcy Cases and the holders of the crypto assets disputed in the State Court Action—regarding the Gemini Earn program. Such discovery would conceivably burden Genesis, diverting their time and resources away from the Genesis Bankruptcy Cases.

8.     Second, in the event of a monetary judgement against Defendant DCG, Defendant DCG's statutory right to contribution from Genesis would conceivably impact the bankruptcy estates in the Genesis Bankruptcy Cases. *See* 15 U.S.C. § 77k(f)(1) (stating that under the Securities Act, "every person who becomes liable to make any payment under this section may recover contribution as in cases of contract from any person who, if sued separately, would have been liable to make the same payment"). All of Plaintiff's allegations against Defendant DCG stem from DCG's association with Genesis. In fact, but for the Genesis Bankruptcy Cases, including the automatic stay under 11 U.S.C. § 362(a) that prohibits the filing of actions against a debtor relating to prepetition claims or seeking control over property of the estate, Plaintiff likely would have asserted claims against Genesis in the State Court Action. The gravamen of Plaintiff's Complaint against Defendant DCG, is that DCG's purported "power and influence" caused Genesis' alleged misconduct and violation of the Securities Act. (Ex. A, Compl. ¶¶ 105-112).

Any finding that Defendant DCG is liable is therefore dependent on a finding that Genesis engaged in actionable misconduct. Thus, if Defendant DCG is liable for damages in the State Court Action, it is then entitled to assert a contribution claim against Genesis in the Genesis Bankruptcy Cases. Given Genesis' strained financial resources, it is conceivable that any such claim would increase the claims against the Genesis bankruptcy estates to the detriment of all of its creditors. That alone is sufficient grounds for §1452(a) jurisdiction. *See In re WorldCom, Inc. Secs. Litig.*, 293 B.R. 308, 320-321 (S.D.N.Y. 2003) (finding the court had "related to" jurisdiction because Defendants identified a reasonable basis for a potential Securities Act contribution claim that would conceivably impact the bankruptcy estate).

9.     The bankruptcy code's removal provisions are not limited by the anti-removal provisions in Section 22(a) of the Securities Act. *See Cal. Pub. Emps.' Ret. Sys. v. WorldCom, Inc.*, 368 F.3d 86, 108 (2d Cir. 2004).

10.    Accordingly, the interconnectedness between this action and the Genesis Bankruptcy Cases makes Plaintiff's Securities Act claims removable to this Court under 28 U.S.C. § 1452(a). *See SPV Osus Ltd.*, 882 F.3d at 342.

**II.     Removal is also Proper under 28 U.S.C. § 1453.**

11.    Plaintiff filed this case as a putative class action pursuant to N.Y. C.P.L.R. § 901, which authorizes actions brought by one or more representative parties, and which is substantially similar to Rule 23 of the Federal Rules of Civil Procedure. (Ex. A, Compl. ¶¶ 1, 93-98). Thus, the Complaint constitutes a class action under the Class Action Fairness Act ("CAFA"). 28 U.S.C. § 1332(d)(1)(B).

12.    Pursuant to 28 U.S.C. § 1332(d), this Court has original jurisdiction over the Complaint under CAFA because this action: (A) includes more than 100 proposed plaintiff class

members; (B) involves an amount in controversy exceeding five million dollars; and (C) has minimal diversity of citizenship among the parties. *See Standard Fire Ins. Co. v. Knowles,* 568 U.S. 588, 592 (2013).

> **A.      Plaintiff Alleges a Putative Class with over a Hundred Proposed Members**

13.     Plaintiff asserts claims "on behalf of the Class, who invested in the "Gemini Earn" program . . . and who were damaged thereby." (Ex. A, Compl. ¶ 93). "[T]hose 'class members' include 'persons (named or unnamed) who fall within the definition of the *proposed* or certified class.'" *Standard Fire Ins. Co.*, 568 U.S. at 592 (quoting 28 U.S.C. § 1332(d)(1)(D)).

14.     Upon information and belief, the proposed class contains over one hundred potential plaintiffs, as Plaintiff alleges that "there are hundreds of thousands of members in the proposed Class." (Ex. A, Compl. ¶ 94).

15.     The Complaint therefore readily satisfies numerosity for the purposes of CAFA jurisdiction.

> **B.      The Amount in Controversy is Satisfied**

16.     Plaintiff seeks rescission of their purported investment, "compensatory damages . . . including pre-judgment and post-judgment interest thereon[,]" "expenses incurred in this action, and their attorneys' fees and expert fees[,]" as well as numerous types of equitable and injunctive relief. (Ex. A, Compl. at Prayer for Relief).

17.     Though the Complaint does not plainly state an amount in controversy, "as specified in § 1446(a), a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 89 (2014).

18.     Upon information and belief, Plaintiff's request for rescission and/or compensatory

damages likely alone satisfies the amount in controversy requirement. Plaintiff alleges "Defendants raised billions of dollars of crypto assets" in connection with the controversy. (Ex. A, Compl. ¶ 3). According to the Complaint, Plaintiff, and all others similarly situated, "suffered significant harm" when DCG's subsidiary, holding "approximately $900 million in investor assets from approximately 340,000 Gemini Earn investors," suspended their ability "to withdraw their crypto assets from the Gemini Earn program[.]" (Ex. A, Compl. ¶ 9). If Plaintiff were awarded rescission or compensation of just 1% of the aforementioned assets, then that would amount to $9 million—far exceeding the statutory threshold of $5 million.

19.     Moreover, "CAFA explicitly provides for aggregation of each class member's claims in determining whether the amount of controversy is at least $5,000,000." *Blockbuster, Inc. v. Galeno*, 472 F.3d 53, 59 (2d Cir. 2006) (citing 28 U.S.C. § 1332(d)(6)). Plaintiff seeks reimbursement of his and other class members' expenses in connection with the controversy. Any reasonable calculation thereof would substantially increase the amount in controversy. This other relief, when aggregated, confirms that the amount in controversy exceeds $5 million.

20.     The Complaint therefore satisfies CAFA's requirement that the amount in controversy exceeds $5 million when aggregated among putative class members. *See* 28 U.S.C. § 1332(d)(2).

**C.     Minimal Diversity of Citizenship Exists**

21.     Under CAFA, federal courts have jurisdiction if *any* putative class member is a citizen of a state different from *any* defendant at the time of removal. 28 U.S.C. § 1332(d)(2)(A).

22.     For purposes of diversity jurisdiction and removal, a corporation is "a citizen of every State . . . by which it has been incorporated and of the State . . . where it has its principal place of business." 28 U.S.C. § 1332(c)(1).

23.     Defendant Gemini is incorporated in the state of New York, and maintains its principal place of business in New York.  (Ex. A, Compl. ¶ 15).  Defendant Gemini is therefore a citizen of New York.

24.     Defendant DCG is incorporated in the state of Delaware and maintains its principal place of business in Connecticut.  (Ex. A, Compl. ¶ 16).  Defendant DCG is therefore a citizen of Delaware and Connecticut.

25.     For purposes of diversity jurisdiction and removal, "an individual is a citizen of the State where he is domiciled."  *Warren v. Guerrero*, 2022 WL 282919, at *4 (S.D.N.Y. Jan. 31, 2022) (citing *Palazzo ex rel. Delmage v. Corio*, 232 F.3d 38, 42 (2d Cir. 2000)).

26.     Upon information and belief, Plaintiff is domiciled in, and a citizen of, California.

27.     Though the Complaint does not refer to Plaintiff's domicile, Plaintiff can only be a citizen of one state.  *See id.* ("An individual may have multiple residences, but '[a]t any given time, a person has but one domicile.'") (alteration in original) (citation omitted).  Because of this, and the fact that Defendants DCG and Gemini are not citizens of the same state, Plaintiff is necessarily a citizen of a different state than at least one of the Defendants.

28.     The Complaint therefore has at least minimum diversity among the parties.

29.     Accordingly, CAFA jurisdiction is satisfied.

30.     "CAFA's removal provisions are not limited by [the anti-removal provision in] Section 22 [of the Securities Act]."  *Owen v. Elastos Found.*, 438 F. Supp. 3d 187, 191 (S.D.N.Y. 2020).  Therefore, this action is removable pursuant to 28 U.S.C. §§ 1446 and 1453.

## CONCLUSION

31.     Defendant has established adequate grounds for removal and has satisfied all procedural requirements.

32.    Though all defendants' consent is not required for removal pursuant to 28 U.S.C. §§ 1452(a), and 1453(b), Defendant Gemini has expressed their consent to this Notice of Removal.

33.    In filing this Notice of Removal, Defendant does not concede that any claims stated in the Complaint are valid under any applicable law.  Defendant reserves and expressly does not waive any rights, claims, or defenses that may be available to it.  Defendant also reserves the right to amend or supplement this Notice of Removal with additional evidence and argument as needed to support the "short and plain statement of the grounds for removal" contained herein.  28 U.S.C. § 1446(a).

34.    Pursuant to 28 U.S.C. § 1446(d), promptly after filing this Notice, Defendant will file a copy of this Notice of Removal with the Clerk of the Supreme Court of the State of New York, New York County, and will serve Plaintiff with this Notice of Removal.

WHEREFORE, Defendant DCG hereby properly removes this action, captioned *Tobias Moeller-Bertram v. Gemini Trust Company, LLC et al*., Index No. 151710/2023, from the Supreme Court of the State of New York, New York County, to the United States District Court for the Southern District of New York.

Dated:  March 9, 2023                    Respectfully Submitted,
        New York, New York

                                         */s/ Jonathan D. Polkes*
                                         Jonathan D. Polkes
                                         Caroline Hickey Zalka
                                         Jessica L. Falk
                                         Nicole E. Prunetti
                                         Dylan L. Ruffi

                                         WEIL, GOTSHAL & MANGES LLP
                                         767 Fifth Avenue
                                         New York, NY 10153
                                         Telephone: (212) 310-8000
                                         Facsimile: (212) 310-8007
                                         jonathan.polkes@weil.com
                                         caroline.zalka@weil.com
                                         jessica.falk@weil.com
                                         nicole.prunetti@weil.com
                                         dylan.ruffi@weil.com

                                         *Attorneys for Defendant Digital Currency Group, Inc.*